```
              THE UNITED STATES DISTRICT COURT

                FOR THE DISTRICT OF MONTANA

                      BILLINGS DIVISION
```

| | |
|---|---|
| ALLAN G. HOLMS, INC., d/b/a )<br>HOLMS & ASSOCIATES, INC.;   )<br>ALLAN G. HOLMS, individually; )<br>MAXIM MINING LLC; and MAXIM  )<br>MINING, INC.,                )<br>                              )<br>     Plaintiffs,             )<br>                              )<br>vs.                           )<br>                              )<br>DENNIS MRAZ, DM TECHNOLOGIES, )<br>LTD., FRED BEANE, JACK BATES, )<br>GRAY HAWK ENERGY, INC.,       )<br>VULCAN CAPITAL MANAGEMENT,    )<br>INC., and JOHN DOES 1 through )<br>25,                           )<br>                              )<br>     Defendants.              )  | CV 06-26-BLG-RWA<br><br><br><br><br>**FINDINGS AND RECOMMENDATIONS OF**<br>**UNITED STATES MAGISTRATE JUDGE**<br>**AND ORDER** |

Pending before the Court is Defendants' Motion to Dismiss in this case involving claims under Montana law for breach of contract and various torts. The United States Magistrate Judge has considered the briefs and supporting materials submitted by the parties and, pursuant to 28 U.S.C. § 636 (b) (1) (B), recommends that the Court grant the motion, as follows.

                        I.  BACKGROUND

In August of 2005, Plaintiff Allan Holms, Defendant Dennis Mraz, Defendant Jack Bates, and Defendant Fred Beane participated in a teleconference meeting wherein they discussed the formation of a joint venture for the purchase and operation of a highwall mining

operation[1]. As a result of that teleconference, Plaintiffs allege that Holms (individually and on behalf of Allan G. Holms, Inc. ("Holms, Inc.")), Mraz (individually and on behalf of DM Technologies, LTD ("DM"), Beane and Bates (individually and on behalf of Gray Hawk Energy, Inc.), entered into a written agreement ("Agreement")whereby they agreed that they would form a Washington corporation (Maxim Mining, LLC) for the purpose of purchasing and operating the mining system, and each further agreed to various provisions in furtherance of the incorporation and operation of Maxim Mining, LLC[2]. Essentially, Holms was to arrange financing for the operation and negotiate the purchase of the highwall mining equipment (which was located in Kentucky); Beane/Bates/Gray Hawk was to provide mining rights to certain coal reserves in Alabama; and Mraz/DM was to provide licensing agreements for patents required to operate the highwall mining system, as well as providing industry expertise. First Am. Compl., ¶ 18.

In January of 2006, Holms sought financing for the operation through Stockman's Bank in Billings, Montana. The Bank was interested, but preferred that Maxim be incorporated in Montana rather than in Washington. Plaintiffs allege that all parties to the Agreement agreed to do so, to help secure financing from

---

[1]   "Highwall mining is a technique for extracting coal seams exposed to the surface, either by means of an open pit or by natural exposure. The technique has been used within the coal industry since the 1980's." First Am. Compl., ¶ 14.

[2]   The individual Defendants evidently do not agree that they entered into the Agreement on behalf of their businesses; for purposes of the pending motion to dismiss, however, the Court will assume the truth of that allegation.

Stockman's Bank.  First Am. Compl., ¶ 30. Defendant Mraz communicated with the Bank by email and telephone in connection with efforts to obtain financing.  None of the other Defendants had any contacts with the Bank.

As of January 31, 2006, Stockman's Bank "was poised to extend the necessary financing to the joint venture." First Am. Compl., ¶30.  As of February 2, 2006, however, a new Montana corporation had not yet been formed, and the parties were advised that the project could not be structured in the manner contemplated under the Agreement, due to the requirements of securities laws.  Mraz. Supp. Aff., Tabs 1 & 2.  In the interim, Mraz had commenced discussions with other investors, one of whom (Defendant Vulcan Capital Management ("Vulcan")) was interested in taking over the entire project.  On February 14, 2006, Mraz notified Holms that DM and Gray Hawk had concluded that "the deal as proposed by [Holms was] not feasible." Based on this determination, Mraz entered into a new arrangement with Vulcan and Gray Hawk, excluding Holms. Am. Compl., Ex. H.

Three days later, on February 17, 2006, Plaintiffs filed the present action contending that the August, 2005, Agreement was a joint venture among the parties, and that by subsequently entering into a different agreement with Vulcan, to the exclusion of Holms and Holms Inc., the Defendants committed breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, actual fraud, negligent misrepresentation, constructive fraud, deceit, and intentional interference with

prospective economic advantage.

Defendants seek dismissal under Rule 12(b)(1), based on lack of personal jurisdiction. Alternatively, Defendants seek dismissal under Rule 12(b)(6), for failure to state a claim upon which relief can be granted. The motions have been fully briefed and are now ready for decision by the Court.

## II.  DISCUSSION

### A.  Personal jurisdiction

Plaintiffs have the burden of proving the existence of personal jurisdiction. Shute v. Carnival Cruise Lines, 897 F.2d 377, 379 (9th Cir. 1990). Where, as here, a district court decides the jurisdictional issue based on affidavits and written discovery materials, Plaintiffs only need to make a prima facie showing of jurisdiction to defeat the motion to dismiss. Lake v. Lake, 817 F.2d 1416, 1420 (9th Cir. 1987). Plaintiffs' uncontroverted factual allegations are presumed to be true, and factual conflicts are resolved in Plaintiffs' favor. Harris Rutsky & Co. Ins. Serv. Inc. v. Bell & Clements, Ltd, 328 F.3d 1122, 1129 (9th Cir. 2003).

Personal jurisdiction over each Defendant must be analyzed separately. Id. at 1130. To establish the Court's personal jurisdiction over a Defendant, Plaintiffs must show that the Defendant's conduct falls within the scope of the Montana long arm statute, Rule 4B, M.R.Civ.P., and that the exercise of jurisdiction meets federal constitutional principles of due process. Haisten v. Grass Valley Medical Reimbursement Fund, 784 F.2d 1292, 1396 (9th Cir. 1986). The Montana Supreme Court has interpreted Rule 4B as

permitting the exercise of personal jurisdiction to the maximum extent permitted by federal due process. Davis v. American Family Mutual Ins. Co., 861 F.2d 1159, 1161 (Mont. 1988) (citing Decker Coal v. Commonweath Edison Co., 805 F.2d 834, 839 (9th Cir. 1986); State of North Dakota v. Newberger, 613 P.2d 1002, 1004 (Mont. 1980)). Where the state and federal limits are coextensive, the jurisdictional analyses under state law and federal due process are the same. Panavision Int'l, L.P. v. Toeppen,141 F.3d 1316, 1320 (9th Cir. 1998).

Before a Court can exercise personal jurisdiction over a defendant, the defendant must have at least "minimum contacts" with the forum state, so that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 801 (9th Cir. 2004) (citing International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). Personal jurisdiction can be either general or specific. General jurisdiction exists when a defendant engages in "continuous and systematic general business contacts." Id. (citations omitted). Plaintiffs concede that these Defendants do not maintain such a presence in Montana that general jurisdiction exists.

Specific jurisdiction exists when a defendant has sufficient minimum contacts with the forum state to warrant the exercise of jurisdiction. The Ninth Circuit Court of Appeals has established a three prong test for determining the existence of specific jurisdiction:

>   (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or a resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
>   (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
>   (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Schwarzenegger, 374 F.3d at 802 (quoting Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir.1987)).

The first prong encompasses two concepts: purposeful availment and purposeful direction.

>   [A]vailment and direction are, in fact, two distinct concepts. A purposeful availment analysis is most often used in suits sounding in contract. [internal citation omitted] A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort. [internal citations omitted].

Id. at 802.

In this case, Plaintiffs assert claims sounding both in contract and in tort. Thus, both tests potentially apply, and the Court will address both.

   1. Purposeful availment

Purposeful availment is typically demonstrated by evidence of a defendant's activities in the forum state. The question is, whether the defendant's actions were such that the defendant "purposefully [availed] itself of the privilege of conducting

activities in the forum State, thus invoking the benefits and protections of its laws." Id. (citing Hanson v. Denckla, 357 U.S. 235, 253 (1958)).

The Court begins its analysis by noting that the Agreement itself made no mention whatsoever of Montana. It essentially memorialized a telephone conference among persons in states other than Montana. None of the participants was referred to as a Montana resident or corporation. The objective of the Agreement was to form a joint venture for the purchase of mining equipment in Kentucky, for use in mining operations in Alabama. No conduct in furtherance of the Agreement was specifically contemplated in Montana. None of the conduct complained of occurred in Montana.

As to Defendants Beane, Bates, and Gray Hawk, there is no evidence of any business activity or contacts in Montana. The only connection between these Defendants and Montana is that the initial Agreement involved one Montana party – Holms, Inc., a Montana corporation.[3] However, the mere act of contracting with a Montana corporation is not sufficient to confer personal jurisdiction. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478 (1985). This is particularly so where, as here, Plaintiffs have not alleged or shown that the Defendants even knew, or had reason to know, that they were contracting with a Montana corporation.

The inquiry is a bit more complicated for Defendants Mraz and DM. Mraz admits that he had numerous email and telephone contacts

---

[3] All of the other parties to the Agreement either resided or had a principal place of business in a state other than Montana.

-7-

with Stockman's Bank and others in Montana, in connection with legal and financing issues associated with the Agreement. However, efforts to secure financing and legal advice in Montana were initiated by Holms, in furtherance of his financing responsibilities under the Agreement. Holms aff., ¶ 7, 9-10, 18. Mraz' activities in Montana were conducted in response to and at the behest of Holms, and solely for the purpose of cooperating in Holms' attempt to obtain financing.

Nothing in the Agreement contemplated or required financing in Montana. Holms was free to seek financing anywhere it might be available, and in fact, he appears to have done so in Kentucky and elsewhere. First Am. Compl., ¶ 21 & Ex. E. Holms ended up in Montana for reasons of his own; Mraz was in no way the impetus behind his actions.

Under these circumstances, the Court cannot say that by participating in response to Holms' financing efforts, Mraz purposefully availed himself of the benefits and protections of Montana law.

Moreover, the claims asserted by Plaintiffs do not arise out of or relate to financing or legal activities within the State of Montana; they arise out of the Defendant's alleged conduct in entering into an agreement with Vulcan, in New York. The second prong of the test for specific jurisdiction is also not met with respect to these contacts.

The remaining possibility is that the Defendants' alleged assent to Stockman Bank's request that the parties form a Montana

corporation to facilitate financing by the Bank was a sufficient "minimal contact" to warrant this Court's exercise of personal jurisdiction. The evidence on this issue is disputed, because Mraz denies agreeing to incorporate the joint venture in Montana, and states that although he discussed the potential formation of a Montana corporation for purposes of complying with securities laws, he "never fully understood why this proposal was being made." Mraz Supp. aff., ¶ 3. However, even assuming the truth of Plaintiffs' allegations, as the Court must in ruling on the present motion, Plaintiffs' claims for breach of contract and various torts do not arise out of or relate to the formation of Maxim, Inc.. As stated above, Plaintiffs' claims arise out of the Defendants' activities with respect to Vulcan, which took place in New York. The second prong of the test for specific jurisdiction is therefore not met with respect to any forum-related activities that may have occurred due to the incorporation of Maxim, Inc., in Montana, and personal jurisdiction cannot be found based on that contact.

    2.   <u>Purposeful direction</u>

The next inquiry involves the extent to which some or all of the Defendants may have purposefully directed their actions at the forum State. This test focuses on the effect of the Defendants' actions, whether or not they occurred within the forum state. <u>Schwarzenegger</u>, 374 F.3d at 803 (citing <u>Calder v. Jones</u>, 465 U.S. 783, 789-90 (1984)).

To evaluate "purposeful direction," the Ninth Circuit applies a three part test derived from the Supreme Court's decision in

<u>Calder</u>:

> Calder stands for the proposition that purposeful availment is satisfied even by a defendant "whose only 'contact' with the forum state is the 'purposeful direction' of a foreign act having effect in the forum state." ... [Under] <u>Calder</u>, the "effects" test requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the foreign state, (3) causing harm that the defendant knows is likely to be suffered in the foreign state.

<u>Schwartzenegger</u>, 374 F.3d at 803.

Plaintiffs' tort claims are generally based upon the Defendants' alleged conduct in "[hatching] a secret deal with Defendant Vulcan Capital Management, Inc. ("Vulcan Capital") to take over the entire venture to the exclusion of Holms. These actions were intended to injure Holms, the effects of which Defendants knew would be felt in Montana." Pls.' Resp. Br., pg. 2. For purposes of this discussion, the Court will assume that the conduct complained of was intentional.

At this juncture, it is important to again note that of the parties to the Agreement, only Holms, Inc. was a Montana corporation. All of the other parties either resided or had their principal place of business in states other than Montana. While the Agreement clearly stated that Maxim, Inc. was to be a Washington corporation, and that Grey Hawk was a Kentucky corporation, no mention was made of the fact that Holms, Inc., was a Montana corporation. Instead, Holms and Holms Inc. were referred to jointly as the "Holms concerns." All correspondence to both Holms and Holms, Inc., was directed to Allan Holms at his Spokane,

-10-

Washington, address.

There is no evidence to show that the Defendants knew, or had reason to know, that Holms, Inc., was a Montana corporation, or otherwise knew that the effects of their conduct would be felt by a Plaintiff in Montana. The fact that Holms pursued financing in Montana (as well as other states) did not put Defendants on notice that the effects of their allegedly tortious conduct would be felt by a Plaintiff in Montana. See <u>Bancroft & Masters Inc. v. Augusta Nat'l Inc.</u>, 223 F.3d 1082, 1087 (9th Cir. 2000) ("express aiming" occurs "when the defendant is alleged to have engaged in wrongful conduct targeted at a Plaintiff whom the defendant knows to be a resident of the forum state."); cf. <u>Brainerd v. Governors of the University of Alberta</u>, 873 F.2d 1257 (9th Cir. 1989) (personal jurisdiction in Arizona over foreign defendant for claims of tortious interference with contract, because defendant knew plaintiff intended to reside in Arizona and communications were made to a person in Arizona). Plaintiffs' arguments, that the effects were felt in Montana because Stockman's Bank lost Maxim, Inc.'s prospective banking business and the City of Billings, Montana, lost an economic prospect as a result of Defendants' actions, miss the mark and are irrelevant to the issue of personal jurisdiction over these particular Defendants.

For those reasons, the Court finds that Plaintiffs have not met their burden of showing that the Defendants' tortious actions were expressly aimed at Montana, or that they knew that the effects of their conduct would be felt by a Plaintiff in Montana, as

required to establish personal jurisdiction. Personal jurisdiction cannot be exercised over Defendants based on purposeful direction of actions at the forum state, and their Motion to Dismiss should be granted.

## III.

### RECOMMENDATION

For the foregoing reasons, and pursuant to 28 U.S.C. § 636 (b)(1)(B), the undersigned recommends that the District Court GRANT Defendants' Motion to Dismiss (Doc. # 15) for lack of personal jurisdiction.

IT IS ORDERED that the parties shall have ten days from the date of service of these Findings and Recommendation in which to file objections pursuant to 28 U.S.C. § 636 (b) (1) and Rule 72(b), Fed.R.Civ. P..

The Clerk is directed to forthwith notify counsel of record of the making of this Order.

Done and dated this 26th day of June, 2006.

/s/ Richard W. Anderson
Richard W. Anderson
United States Magistrate Judge